UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN GREINER,

    Plaintiff,

v.

CHARTER COUNTY OF
MACOMB, MICHIGAN, a/k/a
MACOMB COUNTY, et al.,

    Defendants.
_____/

Case No. 14-cv-13979
Hon. Matthew F. Leitman

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM (ECF #123)

In this action, Plaintiff John Greiner brought several claims challenging the termination of his employment by Defendant Charter County of Macomb (the "County"). The Court previously granted summary judgment against Plaintiff on all of his claims other than his First Amendment retaliation claim. (*See* ECF #117.) For the reasons explained below, the Court now grants summary judgment against Plaintiff on that remaining claim.

**I**

The Court set forth the facts of this case in great detail in its prior summary judgment order. (*See id.*) The Court incorporates herein the factual recitation from

the earlier order. The Court highlights below only those facts that are essential to understand the Court's ruling below.

Plaintiff worked for the Macomb County Road Commission ("MCRC") from 2000 to 2012. (*See* Greiner Dep. at 37, 148, ECF #89-2 at Pg. ID 1010, 1037.) During the course of his employment, he had numerous disciplinary issues and instances of negligent operation of County equipment. As a result of his poor performance, Plaintiff entered into a Last Chance Agreement ("LCA") with the County in 2009. (*See* LCA, ECF #90-7.) The LCA provided that "[a]ny further acts of negligence, insubordination, or unsafe activity on [his] part shall be cause for his immediate discharge form [sic] employment with the [MCRC]." (*Id.*)

After Plaintiff entered into the LCA, he continued to have disciplinary issues, and the County commenced three separate disciplinary proceedings against him. The Court described these proceedings in its earlier order. (*See* Opinion and Order at 10-14, ECF #117 at Pg. ID 4536-4540.) Each proceeding began with notice to Plaintiff of his alleged misconduct, and each involved a *Loudermill* hearing to inquire into the circumstances of the alleged misconduct. And each *Loudermill* hearing concluded with a finding that Plaintiff had committed misconduct.

With each successive misconduct finding, the County imposed progressive discipline. Following the first finding, the County suspended Plaintiff for three days. (*See* 7/16/12 Suspension Letter, ECF #90-36.) Following the second finding, the

County suspended Plaintiff for ten days. (*See* 8/17/12 Suspension Letter, ECF #89-23.) Following the third finding, the County terminated Plaintiff's employment. (*See* Termination Letter, ECF #89-26.)

Under the Collective Bargaining Agreement between Plaintiff's union and the County, the union had the option to challenge the termination of Plaintiff's employment in arbitration proceedings. (*See* Collective Bargaining Agreement at Article 9, ECF #90-2 at Pg. ID 1424-27.) The union declined to seek arbitration because the union concluded that the County had reasonable grounds for firing Plaintiff. (*See* 1/8/2013 Letter, ECF #90-45.)

Plaintiff now challenges his termination as a violation of his First Amendment rights. He alleges that prior to his termination, he complained to the County that several County workers were committing overtime fraud (i.e., collecting increased overtime pay based upon the false assertion that they had worked more than the allotted hours), and he insists that the County fired him because he complained about that fraud.

## II

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact . . . ." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (quotations omitted). When reviewing the record, "the

court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id*. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* at 255.

# III
## A

The United States Court of Appeals for the Sixth Circuit has established the following framework for evaluating First Amendment retaliation claims at the summary judgment stage:

> First Amendment retaliation claims are analyzed under a burden-shifting framework. A plaintiff must first make a prima facie case of retaliation, which comprises the following elements: "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct." *Scarbrough v. Morgan Cnty. Bd. of Educ.,* 470 F.3d 250, 255 (6th Cir.2006). If the employee establishes a prima facie case, the burden

then shifts to the employer to demonstrate "by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Eckerman v. Tenn. Dep't of Safety,* 636 F.3d 202, 208 (6th Cir.2010) (internal quotation marks omitted). "Once this shift has occurred, summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Id.* Unlike in the *McDonnell Douglas* burden-shifting framework, the burden does not shift back to a plaintiff to show pretext in First Amendment retaliation claims.

*Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294–95 (6th Cir. 2012).

The County argues that it is entitled to summary judgment for two reasons. First, the County contends that Plaintiff has failed to establish the causation element of his prima facie case. Second, the County says that it has established that it would have fired Plaintiff even absent his protected conduct and that no reasonable juror could find to the contrary on this record. The Court agrees with both of those contentions.

**B**

**1**

Plaintiff attempts to establish the causation element of his prima facie case by presenting evidence concerning the "timing of events."[1] (*See* Pl.'s Resp. at 10, ECF

---

[1] Greiner also offers as evidence his "belie[f]" that he was fired in retaliation for reporting the alleged overtime fraud. (Pl.'s Resp. at 7, ECF #133 at Pg. ID 9453.) However, his belief does not suffice as evidence of retaliation.

5

#133 at Pg. ID 9456, quoting *Arnett v. Myer*, 281 F.3d 552, 560-61 (6th Cir. 2002).) More specifically, Plaintiff tries to show a temporal proximity between his complaints of overtime fraud and his firing, and he argues that this proximity demonstrates causation. (*See id.* at 6-10, Pg. ID 9452-9456.) Plaintiff's temporal proximity argument rests upon a letter that he faxed to County official Karen Bathanti on November 5, 2012 – after the presentation of evidence at the third *Loudermill* hearing but before the County announced its decision to fire Plaintiff. In the letter, Plaintiff "insisted" that the third *Loudermill* hearing "needed to be continued so that my witnesses Chris Knapp and Les Durr could testify on my behalf." (*Id.* at 7, Pg. ID. 9453.) Plaintiff suggests that this letter notified Bathanti that he wanted to raise his allegations of overtime fraud during the continuation of the third *Loudermill* hearing, and he notes that the County fired him two days after he sent the letter. Plaintiff argues that this sequence of events shows that the County fired him because of his efforts to expose overtime fraud. Plaintiff's argument suffers from fatal factual and legal flaws.

**2**

The essential factual premise underlying Plaintiff's temporal proximity argument – that his November 5, 2012 letter put Bathanti on notice that he sought to raise overtime fraud issues at a continuation of the third *Loudermill* hearing – is wrong. The letter says *nothing* about overtime fraud. Indeed, the letter does not

even say that Plaintiff intended to show that anyone else committed any wrongdoing. Instead, the letter said that Plaintiff wanted to present his "response" to the "allegations" *against him*. (ECF #104-7 at Pg. ID 3788.)

And while the letter does reference Plaintiff's desire to present testimony from two witnesses, Plaintiff's deposition testimony makes clear that he intended to offer these witnesses to rebut allegations that he committed wrongdoing, not to support a claim that others committed overtime fraud:

> Q.   … You indicated that you had two witnesses that you wanted to have testify at the [L]oudermill hearing, Chris Knapp and Les Durr, do you recall that?
>
> A.   Chris Knapp and Les Durr to be able to testify.
>
> Q.   These are the witnesses you wanted to call?
>
> A.   Correct.
>
> Q.   Who are they?
>
> A.   Chris Knapp is an assistant foreman in division 3 and Les Durr is, or was – I should probably say that about Knapp, is or was, Les Durr was the stockroom manager.
>
> Q.   They work in the roads department?
>
> A.   Yes.
>
> *Q.   What were they going to testify about?*
>
> *A.   Chris Knapp would testify to the fact that I did not ever refuse to lift the tri-rail on September 27th as alleged, and Les Durr would have testified that I received operable walkie-talkies from him and that I returned operable walkie-talkies to him at the end of the day.*

(Greiner Dep. at 325-26, ECF #134-2 at Pg. ID 9558; emphasis added.)

7

Because Plaintiff's letter did not raise the issue of overtime fraud, it does not support Plaintiff's temporal proximity theory of causation.

### 3

Even if Plaintiff's letter had put the County on notice that he wished to make overtime fraud allegations, Plaintiff's temporal proximity theory of causation would still fail as a matter of law. The sequence of events involving the letter does not raise an inference of causation because (1) the Plaintiff had been the subject of progressive disciplinary sanctions for a substantial period of time *before* he sent the letter and (2) the County accused Plaintiff of the wrongdoing that led to his termination and commenced the disciplinary proceedings based on that wrongdoing against Plaintiff *before* he sent the letter.

Simply put, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of causation does not arise." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2nd Cir. 2001) (affirming summary judgment on retaliation claim where employer had imposed "an extensive period of progressive discipline" before employee engaged in protected conduct). Indeed, numerous federal courts have held that temporal proximity, alone, does not establish causation where the employer commenced substantial disciplinary proceedings *before* the employee engaged in the protected conduct. *See, e.g., Francis v. Booz,*

*Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (holding that plaintiff failed to show causation where the employer's "actions that led to [the plaintiff's] probation and termination began *before* her protected activity . . . ." (emphasis in original)); *Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, 1051 (8th Cir. 2007) (holding that plaintiff failed to show causation where he engaged in protected activity "after" disciplinary investigation began); *Ehrlick v. Kovack*, 2017 WL 4071134 at *4 (6th Cir. 2017) (concluding that fact that employer disciplined employee after employee engaged in protected conduct was "not evidence of causation" because, among other things, employer "had drafted the pre-disciplinary hearing letter prior to [plaintiff's] speech"). As this settled authority makes clear, Plaintiff cannot succeed on his temporal proximity theory of causation based upon the November 5, 2012 letter to Bathanti because the County began progressive disciplinary proceedings against him well before he sent the letter and because the County likewise began the particular proceedings that led to his discharge before he sent the letter.

**4**

Finally, even if Plaintiff had established the causation element of his prima facie case, the County would still be entitled to summary judgment on his retaliation claim. That is because the County presented substantial evidence that it would have fired him even absent his complaints about overtime fraud and because, on this

9

record, no reasonable juror could fail to return a verdict in favor of the County. *Dye*, 702 F.3d at 294-95.

As set forth in detail in the Court's earlier summary judgment ruling, Plaintiff had a lengthy record of poor performance and disciplinary problems, and the County had a long history of imposing progressive discipline on Plaintiff. (*See* Opinion and Order at 3-6, 9-14, ECF #117 at Pg. ID 4529-4532, 4535-40.) The discipline included placing Plaintiff on the LCA, suspending Plaintiff for three days, and then suspending Plaintiff for ten days. The County showed a consistent unwillingness to tolerate Plaintiff's poor performance and (through the LCA) had warned Plaintiff that his job was in jeopardy long before Plaintiff complained about overtime fraud. Under these circumstances, no reasonable juror could conclude that the County fired Plaintiff because he raised concerns about the alleged fraud.

## IV

For the reasons explained above, **IT IS HEREBY ORDERED** that the County's motion for summary judgment on Plaintiff's First Amendment retaliation claim (ECF #123) is **GRANTED**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: November 13, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 13, 2017, by electronic means and/or ordinary mail.

                                                s/Holly A. Monda
                                                Case Manager
                                                (810) 341-9764